IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ROBERT M. MAKSYMOWSKI, CINDY MAKSYMOWSKI, RONALD MAKSYMOWSKI, and ROBERT D. MAKSYMOWSKI,<br><br>    Plaintiffs,<br><br>v.<br><br>NAVIENT SOLUTIONS, INC.<br>f/k/a Sallie Mae,<br><br>    Defendant. | Case No.: 4:15-cv-14368-JCO-EAS<br><br>District Judge John O'Meara<br><br>Magistrate Elizabeth Stafford |

**DEFENDANT NAVIENT SOLUTIONS, INC.'S
MOTION TO STAY PROCEEDINGS**

**I.     Local Rule 7.1(a)(2) Statement**

Per Local Rule 7.1(a)(2), on December 15, 2016, respondent Navient Solutions, Inc. ("NSI") conferred with Plaintiff to determine whether Plaintiff would oppose this Motion. Plaintiff did not agree to the relief sought by this Motion.

**II.    Introduction**

By this Motion, respondent NSI  respectfully requests a stay of this proceeding until the United States Court of Appeals for the District of Columbia Circuit (the "DC Circuit") renders a decision in the matter entitled ACA Int'l v. Fed. Commc'ns Comm'n, No. 15-1211 (DC Cir. 2015) (the "ACA Appeal").  As explained below, the ACA Appeal will resolve the central legal issue in this proceeding:  What is the appropriate definition of "capacity" with respect to equipment used to make telephone calls for purposes of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 et seq. (the "TCPA")?  The TCPA prohibits, among other things,

making calls to a cellular telephone number using an automatic telephone dialing system ("ATDS") without the called party's prior express consent. The TCPA states that an ATDS is "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

NSI is a servicer of student loans, and it sometimes makes telephone calls in connection with efforts to collect delinquent amounts. Here, plaintiff Robert M. Maksymowski has delinquent debt for which plaintiffs Robert D. Maksymowski, Ronald Maksymowski and Cindy Maksymowski (collectively, "Plaintiffs") co-signed, and they contend that NSI made calls using an ATDS to their cell phones without consent. However, from NSI's perspective, the issue of consent is entirely irrelevant because the calls were dialed manually—i.e., not through an ATDS. The divergence in the parties' positions turns on this issue of the capacity of equipment to store and dial telephone numbers.

The ACA Appeal involves a challenge to the Omnibus Declaratory Ruling and Order ("Declaratory Ruling") issued by the Federal Communication Commission ("FCC") on July 10, 2015.[1] See Exhibit A (In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling and Order, 30 FCC Rcd. 7961, ¶ 73 (2015)) (the "FCC Order"). The DC Circuit has exclusive jurisdiction pursuant to the Administrative Procedures Act, 47 U.S.C. § 402(a) (the "Hobbs Act"), to vacate the Declaratory Ruling.

---

[1] "The FCC has interpretive authority over the TCPA, and its 'rulings shape the law in this area.'" Selou v. Integrity Solution Servs., No. 15-10927, 2016 U.S. Dist. LEXIS 18189, at *11–12 n.4 (E.D. Mich. Feb. 16, 2016) (citing cases).

In the Declaratory Ruling, the FCC adopted, among other things, a definition of equipment that has the "capacity" to autodial so broad that only a rotary telephone was offered as an example of what would not constitute an ATDS. Declaratory Ruling, p. 15. This definition is flawed on multiple levels, including based on the plain text of the TCPA. In addition, though, the FCC made no distinction with respect to the theoretical capacity of equipment to autodial, as compared to whether that capacity was actually used when calls were made. Id., p. 15–16. This simply defies common sense. For these reasons, the Declaratory Ruling has been the subject of sharp and widespread criticism. In fact, even a member of the FCC—Commissioner Ajit Pai—stated that "[t]o put it kindly, the [Declaratory Ruling's] interpretation is a bit of a mess," and improperly subjects "pretty much any calling device" in our modern world to the requirements of the TCPA. Id., Dissent, p. 115. These observations were echoed in the briefing in the ACA Appeal. And based on the court's comments during oral argument on October 19, 2016, there is reason to believe that the FCC's definition of capacity will not stand.

Accordingly, the Court should not proceed to the merits of Plaintiffs' complaint without having the benefit of the DC Circuit's decision. Notably, a number of courts have already stayed cases pending the DC Circuit's ruling. See, e.g., Kolloukian v. Uber Tech., Inc., No. CV 15–2856–PSG–JEM, 2015 U.S. Dist. LEXIS 174005, at *1 (C.D. Cal. Dec. 14, 2015); Acton v. Intellectual Cap. Mgmt., Inc., No. 15-CV-4004(JS)(ARL), 2015 U.S. Dist. LEXIS 172149, at *6–7 (E.D.N.Y. Dec. 28, 2015); Abplanalp v. United Collec. Bureau, Inc., No. 3:15-CV-203-RJC-DCK, 2016 U.S. Dist. LEXIS 1762, at *9 (W.D.N.C. Jan. 7, 2016); Rajput v. Synchrony Bank, No. 15-CV-1079, 2016 U.S. Dist. LEXIS 150231, at *6 (M.D. Pa. Oct. 31, 2016).

Moreover, under the schedule in place here, a stay is essential. The parties have to complete discovery, including the depositions of NSI and Plaintiffs, and are required to submit a Joint Final Pre-Trial Order on May 17, 2017 and conduct a final pre-trial conference on May 24, 2017. Depending on the outcome of the ACA Appeal, the parties may expend their resources for little reason. Further, the Court should have the benefit of the DC Circuit's decision before proceeding here. The Court therefore should grant the Motion.

### III. Background

#### A. NSI And Plaintiff Robert M. Maksymowski's Loans

NSI is engaged in the business of servicing student loans, including on behalf of the United States Department of Education (the "Department"). The servicing of loans for the Department is governed by a complex set of federal regulations. See 34 C.F.R. §§ 682.400–682.423. Very simply, though, when loans are delinquent, NSI is required to contact the borrowers (34 C.F.R. § 682.411(c)–(f)). Here, plaintiff Robert M. Maksymowski has a delinquent federal loan and several private loans. The other plaintiffs are co-signers.

#### B. Plaintiffs' Claims

As noted above, the TCPA governs the making of calls through an ATDS to a cellular telephone; it does not govern manual calls made to a cellular telephone. Here, Plaintiffs allege that NSI made frequent calls to their cellular telephone numbers, (810) 955-5335, (810) 875-3373, (810) 618-2917, and (810) 618-2913 in 2015. All of these calls were made manually.

During manual dialing, NSI's agent is presented with a customer's account at his or her workstation and determines whether to call the customer. The agent then manually initiates a phone call by clicking the phone number on his or her screen, listens to the phone ring, speaks with the customer about the account (if reached) and then ends the call by noting the result of the

call in NSI's system of record.  Whether NSI's manual dialing constitutes an ATDS may be directly impacted by the DC Circuit's decision.

In this matter, the claims of three of the Plaintiffs are subject to this argument, namely, those of Robert D. Maksymowski, Cindy Maksymowski, and Robert M. Maksymowski.  After their alleged revocations, NSI called their numbers numerous times.  As noted above, however, all of the phone calls were made manually.[2]

### C.  The FCC's Ruling On Capacity, The Dissent And The ACA Appeal

In the Declaratory Ruling, the FCC purported to affirm prior statements that "autodialers need only have the 'capacity' to dial random and sequential numbers, rather than the 'present ability' to do so."  Declaratory Ruling, p. 14.  Based on this, the FCC concluded that "any equipment that has the requisite 'capacity' is an autodialer and is therefore subject to the TCPA." Id.  However, the FCC also expanded the definition by stating that dialing equipment could have the requisite capacity to autodial even if it "requires the addition of software to actually perform the functions described in the definition." Id., p. 15 (emphasis added).  Given this, it is not surprising that the FCC offered a rotary phone as an example of what would not constitute an ATDS, id., although the FCC failed to note that such phones are virtually non-existent in this world of modern technology.

The Dissent, however, found much fault in the majority's conclusion.  For instance, the conclusion is simply contrary to language of the statute.  Congress defined an ATDS as "equipment which has the capacity" to dial random or sequential numbers, not as "equipment

---

[2] The ACA Appeal may not apply to Ronald Maksymowski, because the phone calls to his number may not have been in manual mode.  NSI's investigation continues.  However, NSI made only 2 to 3 calls to his number.  Accordingly, a stay should not be denied based on the calls to him.

which has, has had, or could have the capacity." Id., p. 115. Indeed, to highlight the absurdity of the majority's definition of "capacity" as "the potential or suitability for holding, storing, or accommodating," the Dissent applied the definition to other contexts. For instance, no one would "argue that Lambeau Field in Green Bay, Wisconsin, which can seat 80,000 people, has the capacity (i.e., the 'potential or suitability') to seat all 104,000 Green Bay residents just because it could be modified to have that much seating." Id. Thus, clearly, Congress meant to refer to systems that "actually can dial such numbers at the time the call is made." Id. Moreover, under the majority's definition of capacity, the TCPA covers "virtually all communications devices." Id. Given the ease with which one can "download an app, update software, or write a few lines of code that would modify a phone to dial random or sequential numbers . . . pretty much any calling device or software-enabled feature that's not a 'rotary-dial phone' . . . is an automatic telephone dialing system." Id. The Dissent noted the absurdity of such an interpretation, explaining that it effectively "chill[s] the speech of every American that owns a phone." Id., p. 116. Finally, in a prescient concluding paragraph, the Dissent warned of the "spark [of] endless litigation" that would result from the FCC's ruling and reiterated that the TCPA should be interpreted "to mean what it says." Id., p. 117.

     Following issuance of the Declaratory Ruling, nine organizations and companies filed petitions for review, and those petitions were consolidated into the ACA Appeal. All of the petitions request, among other things, that the DC Circuit vacate the Declaratory Ruling on the issue of capacity. See ACA Int'l v. Fed. Commncn's Comm'n., No. 15-1211, Am. Pet. for Review by ACA Int'l, Doc. 1562251 at 4–5 (DC Cir. July 13, 2015). For example, ACA International's petition asks the DC Circuit to:

> hold unlawful and set aside the [FCC]'s treatment of "capacity" within the definition of the "automatic telephone dialing system" under the Telephone Consumer Protection Act, and compel the Commission to treat "capacity" in a way that comports with a caller's rights of due process and freedom of speech.

Id. The petitioners seek relief from the Declaratory Ruling under the Hobbs Act, which governs a request to "enjoin, set aside, annul, or suspend any order of the [FCC]" under the Communications Act of 1934, 47 U.S.C. § 402(a), and provides that challenges to FCC orders must be made directly to a court of appeals. See 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a).

### D. Oral Argument In The ACA Appeal

As noted above, oral argument took place on October 19, 2016. Based on the comments from the court, the FCC's definition of capacity may be in peril (and rightly so). For instance, when asking questions of the FCC, the court stated:

> What's prohibited is using an automatic dialing system, to make a call using that system. That's all it's prohibiting. No matter what the thing might otherwise do with existing software or software that can be added later, the statute only prohibits making any call using an automatic telephone dialing system. Using it.

Oral Argument, ACA Int'l v. Fed. Commc'ns Comm'n, No. 15-1211 (DC Cir. 2015). Similarly, the court questioned the reasoning behind "subjecting me to strict liability for using my smartphone on Sunday to call my parents when I'm plugging it into an ATDS the rest of the week." Id., at. The court emphasized these concerns, as follows:

> I thought that the Commission was saying, "What we're really concerned with is the use of autodialers to autodial, and we're not concerned with the use of machinery that has the capacity to autodial to call Mom," and you're saying, "Well, no. If it really does have the capacity to autodial, then when you're using it to call someone and you don't have their consent, surprise! My high school buddy who I haven't talked to in forever, no consent, then I might be liable." And you're saying to the latter hypothetical, "yep."

Id. Plainly, these comments offer little encouragement to the FCC.

## IV. Argument

### A. Legal Standard

A trial court has broad discretion to stay proceedings in an action pending the resolution of independent proceedings elsewhere. See Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). Indeed, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Compressor Eng'g Corp. v. Thomas, No. 10-10059, 2016 U.S. Dist. LEXIS 13174, at *9 (E.D. Mich. Feb. 3, 2016) (quoting Landis, 299 U.S. at 254). This is because stays of proceedings can promote judicial economy, reduce prejudice, and prevent inconsistent outcomes in related cases. Monaghan v. Sebelius, 12-15488, 2013 U.S. Dist. LEXIS 89585, at *4 (E.D. Mich. June 26, 2013) (citing judicial economy, prejudice and the risk a decision inconsistent with Sixth Circuit law in deciding to grant a stay); Birchett v. Apt. Inv. & Mgmt. Co., No. 07-CV-12939-DT, 2007 U.S. Dist. LEXIS 94019, at *3 (E.D. Mich. Dec. 26, 2007) (citing judicial economy and prejudice in deciding to grant a stay).

In evaluating a request for a stay, courts consider several factors, including "[1] the potentiality of another case having a dispositive effect on the case to be stayed, [2] the judicial economy to be saved by waiting on a dispositive decision, [3] the public welfare, and [4] the hardship/prejudice to the party opposing the stay, given its duration." Hall v. Forbes Media LLC, No. 15-CV-13844, 2016 U.S. Dist. LEXIS 124005, at *3 (E.D. Mich. Sept. 13, 2016) (citing Beydoun v. Holder, No. 14-cv-13812, 2015 U.S. Dist. LEXIS 17795, at *6 (E.D. Mich. Feb. 13, 2015)). Importantly, courts regularly stay proceedings when an appellate decision is pending that it is likely to have a substantial effect on the claims in the stayed case. Monaghan,

2013 U.S. Dist. LEXIS 89585, at *4 (granting a stay to "wait[] for additional guidance from the Sixth Circuit"); Hall, 2016 U.S. Dist. LEXIS 124005, at *8 (granting a stay pending a Sixth Circuit decision).

### B. A Stay Is Warranted Here Pending The Disposition Of The ACA Appeal, And Plaintiffs Will Not Be Prejudiced.

As explained above, the ACA Appeal involves the question at the heart of this case: What is the appropriate definition of "capacity" under the TCPA? In addition, based on the reasoning of the Dissent, and the comments from the court at oral argument, the FCC's definition may very well be rejected.

Accordingly, the requested stay is warranted because it will protect the parties from spending time and resources on potentially illusory claims and remedies. Monaghan, 2013 U.S. Dist. LEXIS 89585, at *4 ("[I]t would be at odds with the notion of judicial economy for this Court to proceed in this case and risk reaching an ultimate resolution that is inconsistent with precedent the Sixth Circuit creates shortly thereafter."); Birchett, 2007 U.S. Dist. LEXIS 94019, at *3 ("[T]he court finds that a stay will best conserve the resources of counsel, the litigants and the court."). In fact, several courts have granted stays for the exact reasons presented here.[3]

---

[3] See, e.g., Ghassan Shahin v. Synchrony Fin., No. 8:15-cv-2941-T-35EAJ, 2016 U.S. Dist. LEXIS 119260, at *4 (M.D. Fla. Apr. 12, 2016) (granting a stay pending the DC Circuit ruling on whether the FCC's interpretation of capacity has been expanded "beyond Congress' intent"); accord Coatney, No. 6:16-cv-389, 2016 U.S. Dist. LEXIS 118768, at *5 (M.D. Fla. Aug. 2, 2016); Mackiewicz v. Nationstar Mortg., LLC, No. 6:15-CV-465-Orl-18GJK, 2015 U.S. Dist. LEXIS 180770, at *2–3 (M.D. Fla. Nov. 10, 2015); Ricks v. Allied Interstate, LLC, No. 3:16-cv-00205-HES-PDB, 2016 U.S. Dist. LEXIS 118956, at *3–4 (M.D. Fla. July 11, 2016); see also Rose v. Wells Fargo Advisors, LLC, No. 1:16-CV-562-CAP, 2016 U.S. Dist. LEXIS 85287, at *3–5 (N.D. Ga. June 14, 2016); Chattanond v. Discover Fin. Servs., LLC, No. CV 15-08549-RSWL-JCx, 2016 U.S. Dist. LEXIS 24700, at *8 (C.D. Cal. Feb. 26, 2016); Abplanalp v. United Collection Bureau, Inc., No. 3:15-CV-203-RJC-DCK, 2016 U.S. Dist. LEXIS 1762, at *6–8 (W.D.N.C. Jan. 7, 2016); Acton v. Intellectual Capital Mgmt., No. 15-CV-4004(JS)(ARL), 2015

Indeed, a review of the factors that courts consider in determining whether a stay is appropriate clearly demonstrates that this proceeding should be stayed. As an initial matter, the ACA Appeal may very well have a dispositive effect on this matter. Hall, 2016 U.S. Dist. LEXIS 124005, at *8 (granting a stay pending a Sixth Circuit decision that "should provide some guidance"); Monaghan, 2013 U.S. Dist. LEXIS 89585, at *4 (granting a stay to "wait[] for additional guidance from the Sixth Circuit").

Further, a stay will promote judicial economy. If the ACA Appeal is dispositive, the Court and the parties will save significant resources. Moreover, even if it is not dispositive, granting a stay will help to clarify an uncertain legal issue, which will allow the parties to save resources litigating this matter and the Court to render a sound decision. Many courts have recognized similar circumstances as justifying stays. See, e.g., Hall, 2016 U.S. Dist. LEXIS 124005, at *8 ("The Sixth Circuit's guidance . . . will streamline the issues here."); Monaghan, 2013 U.S. Dist. LEXIS 89585, at *4 ("[W]aiting for additional guidance from the Sixth Circuit promotes judicial economy and efficiency."); Birchett, 2007 U.S. Dist. LEXIS 94019, at *3 (E.D. Mich. Dec. 26, 2007) ("The court has carefully considered the matter, and concludes that a stay is in the interests of judicial economy and would not substantially prejudice Defendants.").

Finally, a stay will not be prejudicial. The ACA Appeal is ripe for decision at this time. Thus, the stay will likely be relatively short. See Hall, 2016 U.S. Dist. LEXIS 124005, at *8 ("[T]he stay requested in this case is not expected to be of great duration. Granting a stay in this situation will not result in substantial prejudice or hardship."); Gresham v. Mohr, No. 2:14-cv-1906, 2016 U.S. Dist. LEXIS 60670, at *17 (S.D. Ohio May 6, 2016) ("[I]t does not appear that

---

U.S. Dist. LEXIS 172149, at *6–7 (E.D.N.Y. Dec. 28, 2015) ; Kolloukian v. Uber Tech., Inc., No. CV 15–2856–PSG–JEM, 2015 U.S. Dist. LEXIS 174005, at *1 (C.D. Cal. Dec. 14, 2015).

the short stay contemplated will unduly prejudice or tactically disadvantage Plaintiff."); see also Coatney, 2016 U.S. Dist. LEXIS 118768, at *5 ("Importantly, Plaintiff[s] [have] not shown that he will be prejudiced by a stay at such an early stage in the litigation. It is not likely the stay will be lengthy given that ACA International has been fully-briefed as of February 2016 and the potential prejudice is minimal."). In fact, the DC Circuit probably will render its decision in only a few months—a shorter period of time than was at issue in the many other cases in which courts have granted stays.[4]

## V.     Conclusion

For the reasons stated above, the Court should stay these proceedings until the DC Circuit issues its decision.

---

[4] See, e.g., Yaakov v. Varitronics, LLC, No. 14-5008, 2015 U.S. Dist. LEXIS 114474 (D. Minn. Aug. 28, 2015) (granting stay where decision was expected in approximately 9 months); Salvatore v. Microbilt Corp., 2015 U.S. Dist. LEXIS 114474 (granting stay where decision was expected in approximately 10 months); Provo v. Rady Children's Hosp. San Diego, No. 15-00081, 2015 U.S. Dist. LEXIS 100491 (S.D. Cal. July 29, 2015) (granting stay and finding no prejudice where delay would be "less than a year"); Wolf v. Lyft, Inc., No. 15-01441, 2015 U.S. Dist. LEXIS 94234 (N.D. Cal. July 20, 2015) (granting stay where decision was expected in 11 approximately months); Boise v. ACE USA, Inc., No. 15-21264, 2015 U.S. Dist. LEXIS 87200 (S.D. Fla. July 6, 2015) (granting stay where decision was expected in approximately 11 months); Larson v. Trans Union, LLC, No. 12-cv-05726-WHO, 2015 U.S. Dist. LEXIS 83459 (N.D. Cal. June 26, 2015) (granting stay where decision was expected in approximately 12 months); Ramirez v. Trans Union, LLC, No. 12-cv-00632-JSC, 2015 U.S. Dist. LEXIS 80692 (N.D. Cal. June 22, 2015) (granting stay and finding prejudice "minimal" where decision "will likely be issued within a year.").

LOS_ANGELES/#22951.3

-12-

        Respectfully submitted,

By:   s/ Lisa M. Simonetti
      Attorneys for Defendant
      Navient Solutions, Inc.

Lisa M. Simonetti
Vedder Price (CA), LLP
1925 Century Park East, Suite 1900
Los Angeles, California 90067
T:  +1 424 204 7700

Bonnie L. Martin
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
111 Monument Circle, Suite 4600
Indianapolis, IN 46204
T: (317) 916-2118
F: (317) 916-9076
bonnie.martin@ogletreedeakins.com

Dated:  December 21, 2016

5:15-cv-14368-JCO-EAS Doc # 24 Filed 12/21/16 Pg 12 of 13 Pg ID 182

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2016, I electronically filed the foregoing with the Clerk using the ECF system. The document is available for reviewing and downloading from the ECF system by all counsel of record.

s/   Lisa M. Simonetti